40 pgs

PAID
48318-FL

**FILED**

MAR 0 4 2004

U.S. DISTRICT COURT
~~FLINT, MICHIGAN~~

In The

United States District Court for the
Eastern District of Michigan

04 - 70830

David Eddleman,

    Petitioner,      Civil Action No:

  1727 West Blue Water Highway
  Ionia, MI 48846

Ken McKee, Warden,    Hon.

    Respondent.
  1727 West Blue Water Highway
  Ionia, MI 48846

**ARTHUR J. TARNOW**

**DONALD A. SCHEER**

Petition for Writ of Habeas Corpus

Andrew Wilkins (P56559)
Attorney for Petitioner
3474 Alaiedon Pkwy, Suite 600
Okemos, MI 48864
(517) 862-3973

## PETITION FOR WRIT OF HABEAS CORPUS

**PETITONER,** David James Eddleman, by and through his attorney, Andrew K. Wilkins,

states:

1. David Eddleman is a citizen of the United States and lives in Michigan.

2. Mr. Eddleman is unconstitutionally imprisoned by the Respondent Warden Ken McKee at the Bellamy Creek Correctional Facility in Ionia Michigan.

3. On August 2, 1999, Mr. Eddleman was convicted by a jury trial in the Circuit Court of Wayne County, of second degree murder and felony firearm.

4. Mr. Eddleman was sentenced to 30 to 60 years for the charge Murder in the Second Degree and two years for the felony firearm.

5. Venue is proper in this Court because the matter and conviction arose in Detroit which is in the Eastern District of Michigan.

6. Mr. Eddleman has exhausted all State remedies with regard to the Constitutional arguments raised in this Petition, and copies of the relevant documents are attached to this Petition and Memorandum in support.

   A. A claim of appeal was filed in the Court of Appeals of Michigan.

   B. On March 19, 2002, The Michigan Court of Appeals affirmed all convictions.

   C. An appeal was taken to the Michigan Supreme Court.

1

D.  The Michigan Supreme Court denied the application for leave to appeal on December 4, 2002.

7.  As set forth in this accompanying Memorandum of Law in Support of Petition, David Eddleman is being detained unconstitutionally because his convictions are invalid, and he bases this assertion on the following grounds.

A.  THE STATE COURTS INCORRECTLY RULED THAT THE USE OF A COERCED CONFESSION WAS HARMLESS BEYOND A REASONABLE DOUBT WHEN THE CONFESSION WAS USED THROUGHOUT THE TRIAL AS THE PROSECUTIONS PRIMARY EVIDENCE, NO SCIENTIFIC EVIDENCE IDENTIFIED THE PETITIONER, AND ALL OTHER EVIDENCE WAS TAINTED, CONTRADICTORY, AND/OR COMPROMISED.

8.  As shown in the accompanying Memorandum of Law, David Eddleman's Federal Rights were violated by the aforementioned convictions.

9.  This Court should grant David Eddleman's Petition for Habeas Corpus because the State Court decisions are contrary to or involve an unreasonable application of clearly established Federal law as set firm in the Supreme Court of the United States.  See **28 U.S.C. Sec. 2254 (d) (1).**

10.  Mr. Eddleman has not filed any previous Petitions for Writ of Habeas Corpus in this or any other Federal District Court.

11.  This Petition is timely brought within the one year statute of limitations for Habeas Corpus actions under 28 U.S.C. Sec. 2244 (d) (1) (A).

**THEREFORE,** Petitioner, David James Eddleman requests:

A.     That Respondent be required to appear and answer the allegations of this Petition and Memorandum;

B.     That after full consideration, this Court relieve Mr. Eddleman of the unconstitutional restraint on his liberty;

C.     That this Court Grant such other relief as the Court may deem proper, and;

D.     That this Court grant oral argument in this matter.

Dated: _March 4, 2004_

Respectfully submitted,

Andrew K. Wilkins (P56559)
Attorney for Petitioner
3474 Alaiedon Parkway, Suite 600
Okemos, MI 48864
Telephone (517) 862 - 3973
FAX (517) 349 - 5751

3

IN THE
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**FILED**

MAR 0 4 2004

U.S. DISTRICT COURT
FLINT, MICHIGAN

DAVID EDDLEMAN,
Petitioner

Civil Action No.

**04 - 7 0 8 3 0**

Ken McKee, Warden
Respondent

HON. **ARTHUR J. TARNOW**

**DONALD A. SCHEER**

BREIF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

Andrew Wilkins (P56559)
Attorney for Petitioner
3474 Alaiedon Pkwy, Suite 600
Okemos, MI 48864
(517) 862 – 3973

I

## STATEMENT OF QUESTION PRESENTED

Was the petitioner injured by the trial court allowing the use of a coerced confession obtained by violating the petitioners Fifth and Sixth Amendment rights when the confession was used throughout the trial as the prosecution's primary evidence and was substantially injurious to Mr. Eddleman?

# TABLE OF CONTENTS

Question Presented...............................................................................2

Table of Authorities............................................................................4

Opinions Below..................................................................................5

Standard of Review.............................................................................5

Statement of the Case..........................................................................8

Statement of Facts..............................................................................8

Summary of the Argument...................................................................16

Argument.......................................................................................18

THE STATE COURTS WERE INCORRECT WHEN THEY FOUND THAT THE
INTRODUCTION AND USE OF THE CONFESSION WAS HARMLESS ERROR
BECAUSE THE CONFESSION WAS USED THROUGHOUT THE TRIAL AS THE
PROSECUTION'S PIRMARY EVIDENCE AND WAS THUS SUBSTANTIALLY
INJURIOUS TO MR. EDDLEMAN........................

A. *Coerced confessions are subject to harmless error analysis but the reviewing court
must grant the writ if the confession effects the substantial rights of the petitioner or if
the court is in "grave doubt" about the effect of the confession..............*
B. *The use of the confession at petitioner's trial had a substantial and injurious effect on
his rights because the prosecutor used it throughout the trial, including to negate the
defense's theory and was the prosecutor's main piece of evidence............*
C. *It is improper to focus on the other evidence that was presented during petitioner's
trial to determine if it is sufficient to convict the petitioner because petitioner's
coerced confession bolstered the other evidence, and the confession admitted other
evidence that incriminated the petitioner..................................*

Conclusion.......................................................................................30

Relief Requested................................................................................30

# TABLE OF AUTHORITIES

**Authority**                                                                    **Page**

United States Code
28 USC § 2254 ………………………………………………………………..

Michigan Compiled Laws
Mich. Comp. Laws 750.227b……………………………………………………

United States Supreme Court
Chapman v. California, 386 U.S. 18 (1967)………………………………..
Arizona v. Fulminante, 499 U.S. 279 (1991)……………………………….
Brecht v. Ambrahamson, 507 U.S. 619 (1993)……………………………..
O'neal v. McAninch, 513 U.S. 432 (1995)………………………………….
Williams v. Taylor, 529 U.S. 362 (2000)…………………………………..

United States Circuit
U.S. v. Wolf, 879 F.2d 1320 (6th Cir. 1989)……………………………….
Kordenbrock v. Scroggy, 919 F.2d 1091 (6th Cir. 1990)…………………..
Kyger v Carlton, 146 F.3d 374 (6th Cir. 1998)…………………………….
Francis v. Stone, 221 F.3d 100 (2nd Cir. 2000)……………………………
McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002)………………………..
Everett v. Beard, 290 F.3d 500 (3rd Cir. 2002)……………………………
Taylor v. Withrow, 288 F.3d 846 (6th Cir. 2002)………………………….
Stapleton v. Wolfe, 288 F.3d 863 (6th Cir. 2002)…………………………

State of Michigan
People v. Eddleman, 655 N.W.2d 255 (Mich. 2002)………………………
People v. Eddleman, No. 224957, 2002 WL 433338………………………

4

## OPINION BELOW

The opinion of the Michigan Court of Appeals is unpublished. However, its
unpublished citation is: No. 224957, 2002 WL 433338. The Michigan Supreme Court
denied a delayed application to appeal. 655 N.W.2d 255 (Mich. 2002). Both courts
affirmed the conviction of the petitioner and effectively found that the admission of the
confession was harmless error.

## STANDARD OF REVIEW

The Standard of Review for a habeas corpus petition is set forth in 28 USC §
2254(d). This section provides that a federal court may grant a writ of habeas corpus if
the claim either:

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court
proceeding.

When determining the appropriate standard of review, the date that the petition
for writ of habeas corpus was filed controls. *Williams v. Taylor*, 529 U.S. 362, 402
(2000). 28 USC § 2254(d)(1) contains two clauses stating how a petitioner can qualify for
a writ. *Id.* at 404.

With respect to the fist clause – also known as the "contrary to" clause – there are
two possibilities on how the writ can be granted. *Id.* at 405. First, the state court can
arrive at a decision that is in contrast with the Supreme Court's on a question of law. *Id.*

5

Second, a state court will err if it denies the writ despite the fact that the Supreme Court granted a writ when the facts were materially indistinguishable. *Id.*

Also, the first clause contains an "unreasonable application" clause. *Id.* at 407. A federal court must grant the writ if the state court unreasonably applied Supreme Court precedent by applying the correct legal rule to the facts but did so unreasonably. *Id.* Further, the federal court must grant the writ if the state court extends a legal principle where it should not, or fails to extend a legal principle to a new context where it should apply. *Id.*

With respect to this second clause, the Supreme Court has rejected the reasonable jurist standard. *Id.* at 409. Application of this standard would tend to confuse federal habeas courts by focusing on a subjective standard and not an objective one. *Id.* at 410. The correct interpretation of "unreasonable" is generally unknown. *Id.* at 411. But the Supreme Court has stated that unreasonable does not mean "erroneous" or "incorrect." *Id.* The correct standard is whether the state court applied "clearly established federal law" reasonably. This language demands that the reviewing federal habeas court apply only Supreme Court precedent and not dicta. *Id.* at 412.

In sum the Supreme Court has interpreted 28 USC § 2254(d)(1) as follows:

> Under the 'contrary to' clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 412-12.

When determining the definition of "unreasonable" some increment beyond mere error is required. *Francis v. Stone*, 221 F.3d 100, 111 (2nd Cir. 2000). The court in *Francis* looked in depth at the *Williams* decision and repeated the reasoning of Justice O'Connor's opinion. *Id.* at 108-111. However, the *Francis* court very importantly noted that "increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Id.* at 111 (citations omitted).

The Sixth Circuit has recently restated the rules laid down in *Williams*, in *Taylor v. Withrow*, 288 F.3d 846, 850 (6th 2002). The act does not require that the Supreme Court have actually addressed the exact same facts and law. *Id.* The lower court errs when it unreasonably refuses to extend Supreme Court precedent to a context where it should apply. *Id.* at 851. *See also, Williams v. Taylor*, 529 U.S. 362, 407 (2000).

But if it is clear from the state court's decision that the merits of the petitioner's constitutional claim were not examined in light of Supreme Court precedent, the old standard of review will apply. *Everett v. Beard*, 290 F.3d 500, 508 (3rd Cir. 2002). According to this standard, a federal habeas court owes no deference to a state court decision. *Id.*

Most recently the Circuit Courts have shed light on the definition of "unreasonable application" of federal law. *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002). The test is not whether a competent court could possibly reach the same conclusion. *Id.* That test is too severe. *Id.* Yet just because some error occurred is not enough. *Id.* This test is too lenient. *Id.* The appropriate test is somewhere in the middle.

*Id.* For example, a state court decision is unreasonable if its record lacks support. *Id.* at 36-37.

Of course a petitioner can always qualify for a writ of habeas corpus if they fulfill 28 USC § 2254(d)(2).

## STATEMENT OF THE CASE

On August 2, 1999 David Eddleman was convicted of second-degree murder (Mich. Comp. Laws 750.227b) of Joane Georgescu and possession of a firearm during a felony contrary to Michigan Compiled Laws. Record at 13-14 (August 2). In an unpublished opinion, the Michigan Court of Appeals found that the confession used during Mr. Eddleman's trial was coerced. *People v. Eddleman*, No. 224957, 2002 WL 433338, at *1 (Mich. Ct. App. Mar. 19, 2002). Nevertheless, the court found that the use of the confession was harmless error beyond a reasonable doubt. *Id.* The court relied on the testimony from the following sources in finding the confession harmless: Brian Babbittt, Brian Weaver, Thomas Valastek, and Ricky O'Neil. *Id.*

## STATEMENT OF FACTS

### A. The other evidence presented at trial

Brian Babbitt was called to testify by the prosecutor on July 20, 1999. Record at 85 (July 20). Brian Babbitt testified that in October of 1996 he was a member of Insane Spanish Cobras, a street gang in Detroit. *Id.* at 86. He also testified that the leader of the gang was Jesus Garcia. *Id.* He further testified that Jesus Garcia ordered Mr. Eddleman to perform a mission on a rival gang. *Id.* at 96. Brian Babbitt and Mr. Eddleman left to perform this mission in the same car. *Id.* at 102. In addition, there were two other people

in the car. *Id.* at 103. However, before the shooting occurred, Brian Babbitt testified that he had a bad feeling and exited the car. *Id.* at 111. He then testified that he got into a second car behind the car Mr. Eddleman was in. *Id.* Brian Babbitt then testified that Mr. Eddleman began shooting. *Id.* Finally, Brian Babbitt testified that Mr. Eddleman commented about the shooting afterward. *Id.* at 117.

However, Brian Babbitt's credibility was seriously and dramatically challenged on numerous occasions during the trial. On January 3, 1997 Brian Babbitt was arrested for the killing of Joane Georgescu. *Id.* at 130. On direct examination Brian Babbitt admitted that his statement to the police on January 3, 1997 was not completely truthful. *Id.* at 131. Brian Babbitt's untruthfulness was also admitted on cross-examination. Record at 39 (July 21). On January 3rd he told the police that he was never in the car with Mr. Eddleman. Record at 131 (July 20). According to Brian Babbitt's trial testimony, he actually was in the car with Mr. Eddleman. *Id.* The January 3rd statement failed to mention Jesus Garcia's participation in the crime. *Id.* at 137. Further, when questioned about who originally possessed the gun, Brian Babbitt admitted that he lied to the police on January 3, 1997. Record at 52 (July 21).

On January 7, 1997, Brian Babbitt was arrested again – this time for the murder of Freddy Sanchez. Record at 133 (July 20). On direct examination Brian Babbitt admitted that his January 7th statement to the police was not completely truthful. *Id.* at 133. In his January 7th statement, Brian Babbitt told the police that he was unaware that Freddy Sanchez was the target of a mission before the shooting started. *Id.* at 133-34. However, in his trial testimony Brian Babbitt stated that he actually knew and participated in the murder of Freddy Sanchez. *Id.* at 134. In fact, Brian Babbitt admitted on cross-

examination that his police statement was not the truth. Record at 23 (July 21). Further,

the January 7th statement failed to mention Jesus Garcia's participation in the crime.

Record at 137 (July 20).

On January 10, 1997 Brian Babbitt gave a third statement to the police related to

the Freddy Sanchez murder. *Id.* at 135. According to Brian Babbitt, his January 10th

statement was the complete truth. *Id.* at 135. However, when questioned by the trial

judge, Brian Babbitt admitted that he was untruthful earlier during testimony. Record at

90 (July 21). When cross-examined, Brian Babbitt admitted that his January 10th

statement and his trial testimony were not same. *Id.* at 92-93. On January 22, 1997 Brian

Babbitt received immunity from the Wayne County Prosecutor's office for the murder of

Joane Georgescu. Record at 140-42 (July 20). Further, on January 22, 1997 Brian

Babbitt received immunity for the murder of Freddy Sanchez. *Id.* at 145-47. Finally,

before making his statement on January 10, 1997, Brian Babbitt was aware that Mr.

Eddleman had already given a statement to the police. *Id.* at 148.

Brian Babbitt's credibility was also attacked on cross-examination. *Id.* at 151. In

1995, Brian Babbitt was charged with larceny from a motor vehicle. *Id.* at 161. Brian

Babbitt pleaded guilty to this charge. *Id.* In 1996, Brian Babbitt was charged with

felonious assault and felony firearm. *Id.* at 166. After Brian Babbitt received his

immunity on January 22, 1997, he pled guilty to a reduced charge of aiming without

malice. *Id.* Brian Babbitt did not serve any time in jail for these offenses. *Id.* at 167.

Brian Babbitt was also impeached with his prior testimony against Jesus Garcia.

Record at 78 (July 21). In his preliminary exam testimony against Jesus Garcia, Brian

Babbitt stated that Jesus Garcia handed Mr. Eddleman the gun. *Id.* During his trial

testimony Brian Babbitt stated that another member of the gang handed Mr. Eddleman the gun. *Id.* On cross-examination Brian Babbitt admitted that he never took a polygraph test. *Id.* at 122, 215. Further, Brian Babbitt admitted that while he was incarcerated he received special treatment from the police department. *Id.* at 135. This was inconsistent with his prior testimony. *Id.* at 136.

Further, when the prosecution called Brian Weaver to the stand, Brian Weaver testified that Brian Babbitt committed two prior felonious assaults. Record at 59 (July 22). On cross-examination Brian Babbitt stated that he did not commit these assaults but pled guilty because of his attorney's guidance. Record at 216, (July21). Also, Thomas Valastek contested Brian Babbitt's testimony. *Id.* at 147.

Second, on July 21, 1999 Ricky O'neal was called to testify. *Id.* at 225. Ricky O'neal testified that he was jailed with Mr. Eddleman. *Id.* at 236. He also testified that Mr. Eddleman admitted that he committed the shooting. *Id.* at 237.

However, Ricky O'neal's credibility was also a serious issue during the trial. *Id.* at 245. Ricky O'neal testified that he had been convicted of breaking and entering in 1991. *Id.* Ricky O'neal was also convicted of larceny. *Id.* at 246-47. In 1992, he was convicted of unarmed robbery. *Id.* at 247. For this last crime, Ricky O'neal received three to fifteen years. *Id.* at 249. Ricky O'neal testified that "One day is a lot of time in prison." *Id.* at 242, 249. Ricky O'neal was also charged with assault with intent to rob; the crime that caused his imprisonment with Mr. Eddleman. Record at 4 (July 22). While he was jailed with Mr. Eddleman, Ricky O'neal agreed to testify against Mr. Eddleman for a plea of guilty to a lesser charge. *Id.* at 16, 27, 31. If Ricky O'neal did

not testify against Mr. Eddleman then his sentence agreement was null and void. *Id.* at 33.

Third, Brian Weaver was called to testify, who was a former member of the Insane Spanish Cobras. *Id.* at 35. Brian Weaver was not present when the shooting occurred. *Id.* at 41. In fact, Brian Weaver didn't hear any statements on the night of the shooting about a possible mission. *Id.* at 40. Brian Weaver stated that Mr. Eddleman merely informed him that he was a shooter in an unspecified drive-by. *Id.* at 44.

However, Brian Weaver's credibility was contested. On cross-examination Brian Weaver admitted that he first reported the shooting to the FBI. *Id.* at 49. Brian Weaver stated that he remember the night of the shooting because it was the same night as a Mike Tyson fight. *Id.* at 37. But on cross-examination Brian Weaver was impeached with a copy of the Sports Section of a prior newspaper clipping showing that Mike Tyson fought on November 9, 1996 – two weeks after the shooting. *Id.* at 58. Further, Brian Weaver had been charged with assault with intent to murder. *Id.* at 60. He was placed on probation for this charge. *Id.* at 74. But Brian Weaver did not comply with the terms of his probation. *Id.* at 75-76. Despite his inability to complete the terms of his probation, Brian Weaver didn't go to jail because he was cooperating with the FBI. *Id.* at 78-79. Finally, after Mr. Eddleman's counsel finished recross-examination, the judge seemed to question Brian Weaver's credibility. *Id.* at 100.

The only other witness the court of appeals relied on when finding that the confession was harmless was Thomas Valastek. *Id.* at 104. Thomas Valastek testified that on the night of the shooting he was watching a Tyson/Holyfield fight on television. *Id.* at 106. Before the shooting occurred, Thomas Valastek passed out from alcohol. *Id.*

at 109. He did not wake up until the next morning. *Id.* at 112. Thomas Valastek testified that Mr. Eddleman admitted to the shooting the following day. *Id.* at 114.

However, Thomas Valastek's credibility was also an issue. He was originally arrested for the murder of Joane Georgescu. *Id.* at 128. Thomas Valastek admitted that he was afraid of going to jail when the police arrested him. *Id.* at 129. Thomas Valastek stated that he was arrested while he was watching his children, and was afraid he would never see them again. *Id.* at 144. It was at this point that Thomas Valastek informed the police about the shooter. *Id.* at 131. Thomas Valastek admitted that his first statement to the police contained a lot of lies. *Id.* at 140. After he was arrested, Thomas Valastek was taken to the 9th floor of the police department where he was near Brian Babbitt. *Id.* at 142. While in jail on the 9th floor, Thomas Valastek learned that Brian Babbitt was receiving special treatment from the police force for his testimony against Mr. Eddleman. *Id.* at 142-43. A day later, Thomas Valastek gave a statement that implicated Mr. Eddleman. *Id.* at 143. Finally, Thomas Valastek was impeached with the date of the Mike Tyson fight. *Id.* at 152.

After closing argument the jury returned with questions. Record at 4 (July 30). In their questions, the jury informed the judge that they were deadlocked. *Id.* at 4. Later that same day the jury came back with a note stating "we are no longer able to deliberate, we have reached an impasse." *Id.* at 5. The jury also asked if a person could be found guilty of felony firearm if they were only in the car at the time of the shooting. The jury eventually returned a verdict of guilty of Second Degree Murder and not guilty of First Degree Murder. Record at 13 (August 2).

**B. The use of the confession at trial**

Throughout the trial, the confession was mentioned. After a brief introduction, the prosecutor began his opening statement with Mr. Eddleman's confession. Record at 176 (July 15). When reviewing the evidence, the prosecutor mentioned the confession again in the context of Detective Barbara Simon's proposed testimony. *Id.* at 218. Because the prosecutor had first introduced Mr. Eddleman's confession, the defense counsel discussed it in detail. Record at 26. (July 19).

During the prosecution's case in chief, Brian Weaver testified that Mr. Eddleman confessed to the crime. Record at 96 (July 22). On redirect examination, Brian Weaver again testified that Mr. Eddleman admitted to him that he confessed to the crime. *Id.* at 100. On further examination, the prosecutor asked Brian Weaver specifically about Mr. Eddelman's confession. *Id.* at 101. Critically, Brian Weaver stated that the source of his statement to the police was Mr. Eddleman's confession. *Id.* at 102.

The prosecutions last witness was Detective Barbara Simon. Record at 47 (July 26). Barbara Simon read Mr. Eddleman's confession for the jury. *Id.* at 57. Barbara Simon's testimony was entirely focused on Mr. Eddleman's confession and lasted nearly 5 hours. *Id.* at 46-193 (noting that Barbara Simon's testimony lasted part of next day).

After the close of the prosecution's case, the defense counsel moved for a directed verdict. Record at 46 (July 27). In response, the prosecutor stated that the confession alone could be used to convict Mr. Eddleman. *Id.* at 47. Further, the prosecutor stated that the other evidence was only used to corroborate the confession. *Id.*

The defense counsel attempted to bring forth evidence that another person committed the crime. *Id.* at 69. The defense first called Elizabeth George to the stand. *Id.* at 62. However, on cross-examination the prosecutor asked Elizabeth George about

the confession. *Id*. at 74. On re-direct the confession was mentioned again. *Id*. at 77. Second, the defense called Nikki Diana to the stand. *Id*. at 78. On cross-examination the prosecutor asked Nikki Diana about the confession. *Id*. at 87. Again, on re-direct the confession was mentioned. Third, Edward Luca was called to the stand. *Id*. at 99. Edward Luca was cross-examined twice about the confession. *Id*. at 109. 110. Finally, the defense called George Pitian to testify. *Id*. at 112. George Pitian was questioned four times about the confession. *Id*. at 116, 124, 125, 128. Each of these witnesses was called in order to testify that another person committed the crime.

For its final witness, the defense called Dr. Abramsky to the stand as an expert in psychology and confessions. Record at 3 (July 28). The judge admitted Dr. Abramsky as an expert in psychology but not in confessions. *Id*. at 20. Dr. Abramsky's entire testimony was on the authenticity of Mr. Eddleman's confession and lasted 3 hours. *Id*. at 3, 125.

## C. The closing argument

During the prosecutor's closing argument, the confession was mentioned frequently. *Id*. at 151. The prosecutor stated that the confession was "first and foremost" of the evidence presented. *Id*. at 162. Further, the prosecutor used the confession to introduce nine additional items that could be used to incriminate Mr. Eddleman. *Id*. at 185-87. Finally, the confession was mentioned at least four other times during the prosecutor's closing argument. *Id*. at 188-93.

In an attempt to minimize the effect of the confession, the defense counsel mentioned it in his closing argument as well. Record at 15 (July 29). In fact, the defense

counsel attempted to minimize the effect of the confession by combating the testimony of Barbara Simon. *Id*. at 17-21.

On rebuttal, the first evidence the prosecutor mentioned was Mr. Eddleman's confession. *Id*. at 25. When arguing against the defense theory of a different shooter, the prosecutor referred to the confession again. *Id*. at 26. The prosecutor then went into detail about how the confession was taken and its reliability. *Id*. at 29-48.

Finally, while giving the jury instruction the judge mentioned the confession twice. First, he gave a general instruction about the defendant's "statement." *Id*. at 57. And when the prosecutor's theory of the case was read for the jury, the first piece of evidence that the prosecutor referred to was the confession. *Id*. at 76.

## SUMMARY OF THE ARGUMENT

The Michigan Court of Appeals addressed the confession only briefly in its unpublished opinion. If the court on direct appeal finds that a confession was coerced, it must show that the confession was harmless beyond a reasonable doubt. The confession was used throughout the trial as the prosecution's main piece of evidence and was not harmless.

Errors that effect the constitutional rights of defendants are subject to harmless error analysis. A confession is the most damaging piece of evidence that can be introduced during a trial. If the coerced confession had a substantial and injurious effect on the jury's verdict then the error is not harmless. If a judge is in grave doubt about whether the admission of a coerced confession was harmless – the judge must treat the error as if it effected the jury's verdict. The state's interests are trumped by the protection of the petitioner's constitutional rights and are protected through application of

the "grave doubt" standard.  Mr. Eddleman is entitled to a writ because his constitutional rights have been violated and the admission of the confession was not harmless-error. Given the amount of the prosecution's reliance on the confession and the Supreme Court's reasoning about a confession's impact on a jury, the error was not harmless and the writ should be granted.

The role of the confession at trial is important in determining whether the error was harmless. The prosecutor used Mr. Eddleman's confession throughout the trial.  If the prosecution uses the confession in an attempt to negate the theory of the defense, the error is not harmless.  The prosecution used the confession at trial to contest the defense's theory that the shooter was another person and not Mr. Eddleman.  In sum, the prosecution's use of the coerced confession at the trial was constant, blatant, and injurious to Mr. Eddleman.

If the prosecutor admits both a properly admitted statement and a coerced confession the error is still harmful.  First, the jury could believe that the presence of two or more statements – only one of which is coerced     corroborate each other and thus return a guilty verdict.  Further, simply because the coerced confession was duplicative of untainted evidence does not make the error harmless.  The admission of a coerced statement bolsters the other evidence.  Mr. Eddleman should be granted a writ because the other evidence used to convict him is tainted by the coerced confession.  Second, the admission of Mr. Eddleman's coerced confession led toward the admission of a number of other pieces of evidence that incriminated Mr. Eddleman.

This court should grant Mr. Eddleman a writ of habeas corpus because the

prosecution admitted a coerced statement that was substantially injurious to Mr.

Eddelman.

## ARGUMENT

THE STATE COURTS WERE INCORRECT WHEN THEY FOUND THAT THE
INTRODUCTION AND USE OF THE CONFESSION WAS HARMLESS ERROR
BECAUSE THE CONFESSION WAS USED THROUGHOUT THE TRIAL AS THE
PROSECUTION'S PIRMARY EVIDENCE AND WAS THUS SUBSTANTIALLY
INJURIOUS TO MR. EDDLEMAN.

The Michigan Court of Appeals addressed the confession only briefly in its

unpublished opinion. *People v. Eddleman*, No. 224957, 2002 WL 433338, at *1 (2002).

Without going into specific detail, The Court of Appeals found that the confession was

coerced but that the use of the coerced confession was harmless beyond a reasonable

doubt. *Id.*

If the court on direct appeal finds that a confession was coerced, it must show that

the confession was harmless beyond a reasonable doubt. *Brecht v. Ambrahamson*, 507

U.S. 619, 636 (1993). However, on collateral appeal the petitioner must show that the

coerced confession had a substantial influence on the jury's verdict. *Id.* at 639. But if the

reviewing court is in "grave doubt" about the effect of the confession, then the writ must

be granted. *O'neal v. McAninch*, 513 U.S. 432, 439-40 (1995).

The confession was used throughout the trial as the prosecution's main piece of

evidence. The state court abruptly found that the confession was harmless beyond a

reasonable doubt. This court should grant the writ because the use of the confession was

prejudicial to petitioner and violated his constitutional rights.

A. *Coerced confessions are subject to harmless error analysis but the reviewing court must grant the writ if the confession effects the substantial rights of the petitioner or if the court is in "grave doubt" about the effect of the confession.*

Errors that effect the constitutional rights of defendants are subject to harmless error analysis. *Chapman v. California*, 386 U.S. 18, 22 (1967). In *Chapman*, the Supreme Court for the first time addressed whether constitutional errors are subject to harmless-error. *Id.* The Court began its reasoning by noting the purpose of having a harmless-error rule. *Id.* The Court noted that "harmless-error rules all aim at . . . a rule that will save the good in harmless-error practices while avoiding the bad . . ." *Id.* at 22-23. Applying this reasoning, the Court ruled that before an error can be found harmless, the court must find that the error was harmless beyond a reasonable doubt. *Id.* at 24. The Court then looked at the prosecutor's comments about the defendant's failure to testify and found that the error was not harmless. *Id.* at 24-25.

A confession is the most damaging piece of evidence that can be introduced during a trial. *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991). The Supreme Court in *Fulminante* for the first time extended harmless error analysis to coerced confessions. *Id.* at 295. However, the Court warned that "confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." *Id.* at 296. Further, the Court warned those courts applying harmless error to "exercise extreme caution before determining that the admission of the confession at trial was harmless." *Id.* Even though the defendant made two confessions – only one of which was coerced – the Court found that admission of the coerced confession was not harmless error. *Id.* at 299.

If the coerced confession had a substantial and injurious effect on the jury's verdict then the error is not harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Court in *Brecht* limited the holding of *Chapman* when it ruled that a petitioner must show that a trial error actually prejudiced him. *Id.* In making this finding, the Court looked at the interest that states have in finality of criminal prosecutions. *Id.* at 637. Further, the Court found that this standard was consistent with the history of habeas corpus. *Id.* To enforce these interests the court held that on collateral appeal the petitioner must show that the coerced confession has a substantial influence on the jury's verdict. *Id.* at 639. The Court found that the violation of the petitioner's *Miranda* rights was a trial error that was harmless because the prosecutor only mentioned the defendant's silence on two pages of a 900-page transcript. *Id.* at 639.

If a judge is in grave doubt about whether the admission of a coerced confession was harmless – the judge must treat the error as if it effected the jury's verdict. *O'neal v. McAninch*, 513 U.S. 432, 435 (1995). In *O'neal* the court limited the effect of *Brecht*. *Id.* at 438-39. First, the Court noted that in does not matter if the *Chapman* or *Brecht* standard is applied, the risk of doubt is on the state. *Id.* at 439. Quoting a house report, the Court in *O'neal* reasoned that if "the error is of such a character that its natural effect is to prejudice a litigant's substantial rights, [then] the burden of sustaining a verdict will, notwithstanding this legislation rest upon the one claims under it." *Id.* at 440 (internal citations omitted). The Court noted there are two possible errors that can occur, a technical error and an alternative. *Id.* Constitutional errors are subject to the above analysis. *Id.* To avoid the unbearable error of holding a person in violation of the

constitution, the Court ruled that if a judge is in "grave doubt" about the effect of the error, the judge must issue the writ. *Id.* at 442.

The state's interests are trumped by the protection of the petitioner's constitutional rights and are protected through application of the "grave doubt" standard. *Id.* at 443. The Court in *O'neal* took into consideration the states' interest in avoiding retrials and the potential freedom for undeserving defendants. *Id.* Nevertheless, the court found these interests lacking. *Id.* The Court reasoned that because the state is responsible for the constitutional error, its interests are diminished compared to the petitioner's. *Id.* In sum, the Court ruled that "when an error's natural effect is to prejudice substantial rights and the court is in grave doubt about the harmlessness of that error, the error must be treated as if it had a 'substantial and injurious effect' on the verdict." *Id.* at 444.

Mr. Eddleman is entitled to a writ because his constitutional rights have been violated and the admission of the confession was not harmless-error. When determining whether the error is harmless, the standard laid down by the Supreme Court in *Chapman* and more recent decisions will control. Accordingly, the very nature of the confession must be taken into consideration. The confession has a profound impact on the jury and has the ability to render a verdict on its own.

Given the amount of the prosecution's reliance on the confession and the Supreme Court's reasoning about a confession's impact on a jury, the error was not harmless and the writ should be granted. Further, because a coerced confession affects the substantial rights of the petitioner, the risk of doubt is on the state. Therefore, if this court is in

21

"grave doubt" as to the effect of the confession on the minds of the jury, it must issue the writ.

B.  *The use of the confession at petitioner's trial had a substantial and injurious effect on his rights because the prosecutor used it throughout the trial, including to negate the defense's theory and was the prosecutor's main piece of evidence.*

Even if a petitioner gives other out of court statements that tend to incriminate him, the error is not automatically harmless. *U.S. v. Wolf,* 879 F.2d 1320, 1324 (6th Cir. 1989). In *Wolf,* the petitioner gave a confession that was coerced. *Id.* at 1322. The petitioner was then charged with murder based on her confession. *Id.* The confession was recorded and played for the jury. *Id.* The prosecutor also relied on the confession several times during his closing argument. *Id.* However, the prosecutor also presented three other statements that the petitioner made that were evidence of guilt. *Id.* at 1324. The petitioner gave these statements to different individuals; the first to an individual whom the petitioner had hired to kill the victim, the second was to this same individual's girlfriend, and the third individual was petitioner's friend who testified that he overheard petitioner discussing the murder on the telephone. *Id.* Despite the significance and independence of these statements, the court found that the coerced confession was not harmless. *Id.*

The role of the confession at trial is important in determining whether the error was harmless. *Id.* at 1325. In *Wolf,* the court began its reasoning by looking at the old standard in *Chapman* as to whether the error was harmless beyond a reasonable doubt. *Id.* at 1323. However, the court applied some of the same reasoning of the cases following *Chapman. Id.* at 1324. It stated that "[b]ecause juries consider confessions

22

extremely probative of guilt, some courts recognize that admission of an unlawfully obtained confession can rarely be harmless error." *Id.* When looking at the entire record the court could not find that the error was harmless under *Chapman*. *Id.* The court even noted that the petitioner's credibility was suspect. *Id.* However, the court reasoned that absent the conviction it was difficult to tell if the jury would return a guilty verdict. *Id.* Ultimately, the court found that the confession's role at the trial was too important. *Id.* This was evidenced by the prosecutor's use of the confession four times during closing argument and the jury's request to hear the confession during its deliberations. *Id.* at 1325.

The prosecutor used Mr. Eddleman's confession throughout the trial. The record reflects that the prosecutor used the confession at the beginning of his opening statement. Record at 176 (July 15). The prosecutor also used the confession on numerous occasions during his closing argument – in fact even more than it was used in *Wolf*. Record at 185-93 (July 28). In his closing argument the prosecutor highlighted the confession as "first and foremost" of the evidence that was presented during the trial. *Id.* at 162. When presenting the evidence, the prosecutor presented his star witness last – namely Barbara Simon. Record at 47 (July 26). Barbara Simon read Mr. Eddleman's confession for the jury. *Id.* at 57. Because of the likely effect that the confession would have on the jury, the defense counsel presented an expert in an attempt to convince the jury that the confession was unreliable. Record at 3 (July 28). Critically, the prosecutor himself admitted that the confession was the most vital piece of evidence. Record at 47 (July 27). According to the prosecutor, the other witnesses that testified as to the defendant's post-murder statements were only used to corroborate the confession. *Id.* After the jury was

sent out for deliberation, it came back twice with notes indicating that they were unable to reach a verdict. Record at 4, 5 (July 30). The confession was not harmless under *Wolf* even though the prosecutor presented other evidence because the confession was the prosecutor's main evidence and was presented to the jury on numerous occasions, over and over again.

If the prosecution uses the confession in an attempt to negate the theory of the defense, the error is not harmless. *Kordenbrock v. Scroggy*, 919 F.2d 1091, 1100 (6th Cir. 1990). In *Scroggy*, the petitioner and a co-defendant plotted to rob a store two days before the robbery. *Id.* at 1094. They visited the store two days before the robbery. *Id.* The night before the robbery and just before the robbery the petitioner drank alcohol, smoked marijuana, and took two Quaaludes. *Id.* During the robbery the petitioner shot two people, killing one. *Id.* After the killing, the police interrogated the petitioner and obtained a confession. *Id.* The petitioner was tried for capital murder. *Id.* at 1095. The defense did not contest that petitioner was the murderer but rather argued that use of drugs, alcohol, and emotional disturbance resulted in diminished capacity. *Id.* The confession contained no language as to drug or alcohol use. *Id.* The court of appeals held that the confession helped establish the element of intent and countered the defense of diminished capacity. *Id.* at 1099-100.

Further, if the confession contributed to the jury's verdict then the error was not harmless. *Id.* at 1100. It should be noted that the court in *Scroggy* relied on the "beyond a doubt" standard laid down in *Chapman*. *Id.* However, the prosecution's use of a confession to rebut a defense's theory is still likely to have a substantial influence on the jury. *See id.* at 1098 ("[A] jury hearing [the defenses theory] instead of the coerced

24

confession would certainly view the . . . evidence differently."). The court began its reasoning by admitting that there was other evidence that tended to show that the petitioner intended to kill the victim. *Id.* at 1099. However, the defense argued that drugs and alcohol amounted to diminished capacity – countering the necessary intent. *Id.* The court then concluded "the state pushed hard to get the illegal portion of the confession into evidence on the assumption that the confession would likely influence the jury." *Id.* at 1100. The court found that the use of the confession at trial was not harmless error. *Id.*

The prosecution used the confession at trial to contest the defense's theory that the shooter was another person and not Mr. Eddleman. The defense attempted to argue that the real murderer was an individual that had fought with the intended victim two weeks before the shooting. Record at 66-70 (July 27). The defense called Elizabeth George, Nicki Diana, Edward Luca, and George Pitian to testify. *Id.* at 62, 78, 99, 112. Each testified that a fight had occurred about two weeks before the shooting between an unnamed individual and the occupant of the home where the shooting occurred. Elizabeth George testified about the fight. *Id.* at 69. But even though she had no personal knowledge, she was questioned about Mr. Eddleman's confession. *Id.* at 74, 76. Nicki Diana was also called to testify about the fight. *Id.* at 83. She too was cross-examined about Mr. Eddleman's confession even though she had no personal knowledge of it. *Id.* at 87, 88. Edward Luca also testified about the fight. *Id.* at 101. He was also cross-examined about the Mr. Eddleman's confession. *Id.* at 109, 110. Finally, the defense called George Pitian to testify about the fight. *Id.* at 114-15. The prosecution again combated the defense with the confession. *Id.* at 116, 124, 125. The prosecution's

effective use of the confession countered the defense's theory to such an extent that it had an injurious effect on Mr. Eddleman's case.

In sum, the prosecution use of the coerced confession at the trial was constant, blatant, and injurious to Mr. Eddleman. The confession was the prosecution's main piece of evidence and all other evidence that was presented was only used to corroborate the confession. Further, the prosecution used the coerced confession to counter the defense's theory of the case. Accordingly, the use of the confession was not harmless error.

C. *It is improper to focus on the other evidence that was presented during petitioner's trial to determine if it is sufficient to convict the petitioner because petitioner's coerced confession bolstered it, and the confession admitted other evidence that incriminated the petitioner.*

If the prosecutor admits both a properly admitted statement and a coerced confession the error is still harmful. *Arizona v. Fulminante,* 499 U.S. 279, 299 (1991). In *Fulminante,* the petitioner was suspected for killing his stepdaughter. *Id.* at 282. He was then incarcerated for an unrelated offense in another state. *Id.* While he was incarcerated, the police obtained a coerced confession concerning the death of the stepdaughter. *Id.* at 283. After he was released, the petitioner gave another un-coerced statement. *Id.* at 284. Both statements were admitted at the petitioner's trial. *Id.* The Supreme Court held that the presence of an un-coerced statement does not make the first error harmless. *Id.* at 284-85.

The jury could believe that the presence of two statements – only one of which is coerced – corroborate each other and thus return a guilty verdict. *Id.* at 299. First, the Court reasoned that without the presence of the coerced confession, the jury might not

have believed one of the witnesses that testified about the petitioner's un-coerced statements. *Id.* at 298. The court looked in detail at this witness's credibility. *Id.* The court noted that many of the details of the un-coerced confession were corroborated by other evidence but did not find this compelling. *Id.* at 299. Indeed many of the details of the un-coerced statement were only corroborated by the confession. *Id.* Second, the court reasoned that the witness testifying about the un-coerced statement lacked credibility because her husband received immunity for his testimony about the coerced confession. *Id.* at 300. Third, the court noticed that the admission of the coerced confession led to the admission of other evidence that incriminated the petitioner. *Id.* In sum, the presence of the coerced confession has more of an impact on the jury than just the confession itself.

Further, simply because the coerced confession was duplicative of untainted evidence does not make the error harmless. *Kyger v Carlton*, 146 F.3d 374, 382 (6th Cir. 1998). This is because duplicative evidence has a powerful bolstering effect. *Id.* Further, it is improper to focus on the sufficiency of the untainted evidence in determining the jury's verdict. *Id.* (relying on *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).

Just because the prosecutor presents a properly admitted statement does not make the error harmless. *Stapleton v. Wolfe*, 288 F.3d 863, 868 (6th Cir. 2002). In *Stapleton*, the petitioner was convicted by a jury trial for burglarizing two homes. *Id.* at 865-66. Neither of the homeowners could identify the petitioner at trial. *Id.* The police obtained two statements from the petitioner's accomplice. *Id.* at 866. Over the defense's objection, each of these two statements was presented to the jury. *Id.* A second

accomplice also testified against the petitioner. *Id.* The court first found that admission of the first accomplice's statements without the opportunity for cross-examination violated the confrontation clause. *Id.* at 867. The state court found the error to be harmless. *Id.* The Sixth Circuit reversed that finding based on *Fulminante*. *Id.* at 868.

The admission of a coerced statement and other untainted statements is still harmful. *Id.* The court in *Stapleton* relied on *Fulminante*. *Id.* It reasoned that a properly admitted statement is still effected by the improperly admitted statement – in this case a coerced confession. *Id.* In quoting *Fulminante*, the Sixth Circuit reasoned that "it is clear the jury might have believed that the two confessions reinforced and corroborated each other." *Id.* (citations omitted). The *Stapleton* court expanded the ruling in *Fulimante* when it held that simply because "*Fulminante* involved multiple confessions and Stapleton's case involved multiple accomplice statements does not materially distinguish [the cases]." *Id.* The court found that the improper admission of the co-defendant's statements was not cumulative. *Id.* It must be noted that *Stapleton* applied the most current case law it making its ruling. *Id.* at 867 (analyzing the holdings in *Brecht* and *O'neal*).

Petitioner should be granted a writ because the other evidence used to convict him is tainted by the coerced confession. The reasoning of *Fulimante* is particularly applicable. First, it is reasonable to conclude that the jury viewed Mr. Eddleman's confession as giving credibility to the prosecution's other witnesses. As noted, each of the witnesses that implicated Mr. Eddleman had substantial credibility problems. Mr. Babbitt was impeached with numerous statements and received immunity for two murders. Record at 140-47 (July 20). Ricky O'neal was a jail house informant who

received a reduced charge for his testimony.  Record at 16, 27, 31(July 22).  Brian Weaver was charged with assault with intent to murder and failed to complete the terms of his probation. . *Id.* at 78-79.  Yet he received no jail time because of his cooperation with the FBI.  *Id.*  Finally, Thomas Valastek was a suspect in the murder of Joane Georgescu.  *Id.* at 128.  Further, before he gave his statement to the police he was aware that Brian Babbitt had made a deal with the police and was receiving special treatment. *Id.* at 142-43.

Second, the admission of Mr. Eddleman's coerced confession led toward a number of other pieces of evidence that incriminated Mr. Eddleman.  Record at 185-87 (July 28).  These additional items included: (1) an alleged gang punishment if Mr. Eddleman didn't commit the shooting, (2) the effect that the shooting had on the victims, (3) the fact that the gun jammed, (4) the fact that Mr. Eddleman passed out after the shooting, (5) the fact that Mr. Eddleman woke up at 4:00 P.M. and saw the shooting on the news, (6) an alleged statement made to another gang member, (7) who ordered the shooting, (8) how long Mr. Eddleman had been a member of the gang, and (9) Mr. Eddleman's alleged statement that he was drunk during the shooting.  *Id.*  According to *Fulminante*, these pieces of evidence must be considered when determining whether the error was harmless.

Even if it is argued that the coerced confession was duplicative, this argument is invalid.  According to *Kyger*, the effect of the coerced confession has a powerful bolstering effect on the jury.  This court's reasoning must be taken in conjunction with the fact that the jury returned with two notes indicating they were deadlocked.  Record at 4-5 (July 30).  While it is improper under *Kyger* to question the sufficiency of the jury's

verdict without the coerced confession, it is reasonable to assume that without the confession the jury would have returned a not guilty verdict.

Finally, the admission of Mr. Eddleman's other statements through other gang members does not make the error harmless.  According to the court in *Stapleton*, the jury might have believed that these statements were corroborated by Mr. Eddlemans' coerced confession.

## CONCLUSION

The state courts were incorrect when they found that the admission of Mr. Eddleman's coerced confession, obtained in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution, was harmless beyond a reasonable doubt.  The prosecution relied on the confession as its most vital piece of evidence.  It used the confession throughout the trial, including during the defense's case in chief.  The admission of Mr. Eddelman's other statements were bolstered by the confession.  The confession clearly had a substantial and injurious effect on Mr. Eddleman's trial.  But even if this Court in only in "grave doubt' as to the effect of the confession, the writ must be granted.

## RELIEF REQUESTED

WHEREFORE, Mr. Eddelman requests that this Honorable Court grant the  writ of habeas corpus and set aside the convictions.

Respectfully Submitted,

Andrew Wilkins (P56559)
Attorney for Petitioner

30

Not Reported in N.W.2d
(Cite as: 2002 WL 433338 (Mich.App.))

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED   OPINION.   CHECK   COURT
RULES BEFORE CITING.

Court of Appeals of Michigan.

PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff-Appellee,
v.
**David James EDDLEMAN,** Defendant-Appellant.

**No. 224957.**

March 19, 2002.

Before: OWENS, P.J., and HOLBROOK, Jr., and
GAGE, JJ.

UNPUBLISHED

PER CURIAM.

*1 Defendant appeals as of right from his jury trial
convictions of second- degree murder, M.C.L. §
750.317, and possession of a firearm during the
commission of a felony (felony firearm), M.C.L. §
750.227b. Defendant was sentenced to thirty to
sixty years' imprisonment for the murder conviction
and a consecutive two-year term for the felony
firearm conviction. We affirm.

Defendant's convictions stem from the shooting
death of 16 year-old Joane Georgescu. Georgescu
was killed when a bullet fired at the car, in which
she was riding, struck her in the heart. The bullet
entered through the trunk and passed through the
back seat before striking Georgescu. The shooting
was allegedly ordered by the leader of a street gang
to which defendant belonged.

Defendant first argues that the trial court
erroneously allocated the burden of proof at the
hearing on his motion to suppress his police
confession. We review this issue de novo on the
entire record. *People v. Daoud,* 462 Mich. 621, 629;
614 NW2d 152 (2000). Defendant argued below

that the police fabricated the confession and then
coerced him to sign it. Where

> a defendant claims that he involuntarily signed a
> statement and that the statement was fabricated by
> police, the trial court must hold a *Walker* [FN1]
> hearing prior to introduction of the statement at
> trial. At the hearing the trial court must
> determine, assuming the defendant made the
> statement, whether he did so voluntarily. If it is
> found that the defendant voluntarily made the
> statement, the defendant is free to argue to the
> jury that the police fabricated it. However, if the
> trial court at the hearing finds the statement was
> involuntarily made, the statement is inadmissible,
> regardless of the defendant's claim that he
> actually never made it. [*People v. Neal,* 182
> Mich.App 368, 372; 451 NW2d 639 (1990).]

> FN1. *People v. Walker (On Rehearing),*
> 374 Mich. 331; 132 NW2d 87 (1965).

As defendant correctly observes, the prosecution
must prove by a preponderance of the evidence that
there was a valid waiver of the right against self-
incrimination. *People v. Etheridge,* 196 Mich.App
43, 57; 492 NW2d 490 (1992). We agree with
defendant that the trial court erred because it
refused to suppress the statement, despite
concluding that defendant and the interrogating
officer were equally credible in their diametrically
opposing versions of what happened with regard to
the voluntariness issue. The necessary implication
of the trial court's conclusion is that the prosecutor
had not sustained its burden of proving a voluntary
confession by a preponderance of the evidence.

Nonetheless, we conclude that reversal is not
warranted because the error was harmless. *People v.
Anderson (After Remand),* 446 Mich. 392, 406; 521
NW2d 538 (1994). The testimony of several
witnesses clearly implicated defendant in the crime.
Brian Babbitt, also a member of defendant's street
gang, was in a car traveling behind the car
defendant was riding in on the night of the shooting.
Babbitt testified that he witnessed shots coming
from the passenger side of defendant's car, where
defendant was seated. Two other gang members,
Brian Weaver and Thomas Valastek, testified that
they heard defendant admit to being the shooter.
Defendant also told a fellow inmate that he had shot
and killed Georgescu. Given the weight of this

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.W.2d
(Cite as: 2002 WL 433338 (Mich.App.))

Page 2

evidence, we conclude that the erroneous admission

doubt. *Id.*

*2 Next, defendant argues that reversal is required because the trial court erred in failing to fully instruct the jury on the various concepts of accessory culpability when responding to a jury question. We disagree.

An accessory after the fact is someone " 'who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment." ' *People v. Lucas,* 402 Mich. 302, 304; 262 NW2d 662 (1978), quoting Perkins, Criminal Law (2d ed.), p 667. In this case, there was absolutely no evidence that defendant played such a role. Therefore, the trial court did not err in failing to instruct the jury on accessory after the fact.

Further, there is no longer any distinction between an accessory before the fact, and an aider and abettor. *People v. Smielewski,* 235 Mich.App 196, 202- 203; 596 NW2d 636 (1999). An aiding and abetting instruction is appropriate when there is evidence that more than one person was involved in committing the crime, and that the defendant's role may have been less than direct participation. *People v. Bartlett,* 231 Mich.App 139, 157; 585 NW2d 341 (1998). Here, however, there was no evidence that defendant's role in the crime was anything less than direct participation. Therefore, the trial court did not err in refusing to instruct on aiding and abetting.

Defendant next argues that the trial court erred in finding that the prosecution exercised due diligence in assisting the defense in attempting to locate two res gestae witnesses, and further erred in refusing to give a missing witness instruction. We disagree. The prosecutor's former duty to exercise due diligence in producing res gestae witnesses "has been replaced with an obligation to provide notice of known witnesses and reasonable assistance to locate witnesses on defendant's request." *People v. Burwick,* 450 Mich. 281, 289; 537 NW2d 813 (1995). We are satisfied from our review of the record that the trial court did not err in finding that the prosecution provided reasonable assistance in attempting to locate the two missing witnesses. *People v. Long,* 246 Mich.App 582, 586; 633 NW2d 843 (2001). Thus, the trial court properly concluded that defendant was not entitled to a missing witness instruction.

Defendant next argues that the trial court erred when, in responding to a jury question concerning the felony-firearm charge, it essentially instructed the jury on the uncharged crime of carrying a concealed weapon in a vehicle. We agree with defendant that the trial court erred when it responded to the jury's question by reading a hornbook passage that essentially paralleled the instruction for the offense of carrying a weapon in a vehicle, [FN2] CJI2d 11.1(4)-(6), which was not charged in this case. However, we find this error to be harmless. See *People v. Duncan,* 462 Mich. 47, 54; 610 NW2d 551 (2000) (observing that "an instructional error regarding one element of a crime, whether by misdirection or omission, is subject to a harmless error analysis").

FN2. MCL 750.227(2).

*3 The trial court initially correctly instructed the jury on the elements of felony-firearm, using as its paradigm the standard instruction found at CJI2d 11.34. When the jury asked to be re-instructed on the charge during the second day of deliberations, the court re-read the correct instruction it originally gave. Later, the jury sent out a note asking whether a person can be guilty of felony-firearm if that person was only in the car at the time of the shooting. It was in response to this question that the court read the following hornbook passage:

To support a conviction for carrying a weapon in an automobile, the prosecution must show (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he or she was "carrying" it. [3 Gillespie, Michigan Criminal Law & Procedure (2001 Revision), § 80:21, p 645.] [FN3]

FN3. The format of this quote is taken from the Gillespie text and not from the trial transcript. The language, however, is identical.

Pursuant to CJI2d 11.34, the jury was instructed that in order to convict defendant of felony-firearm, the prosecution must prove that defendant knowingly carried or possessed a firearm at the time of the murder. The second and third elements in the

Not Reported in N.W.2d
(Cite as: 2002 WL 433338 (Mich.App.))

Page 3

hornbook passage essentially mirror this element of felony-firearm. Further, in the context of a felony-firearm charge, the first element in the hornbook passage can be reasonably read as correctly pointing out that possession of the firearm can be actual or constructive. See *People v. Hill,* 433 Mich. 464, 469-471; 446 NW2d 140 (1989). While not perfect, we conclude that taken as a whole the instructions fairly presented the issue to be tried and sufficiently protected defendant's rights. *People v. Brown,* 239 Mich.App 735, 746; 610 NW2d 234 (2000). Additionally, given the weight of the evidence adduced at trial, we conclude that failure to reverse defendant's felony-firearm conviction would not be "inconsistent with substantial justice." MCR 2.613(A).

Lastly, in a supplemental pro se brief, defendant argues that the prosecutor's comments during rebuttal closing argument erroneously shifted the burden of proof and improperly impinged on his right not to testify, thus depriving him of a fair trial. We disagree. Claims of prosecutorial misconduct are reviewed on a case-by-case basis, and the challenged remarks are reviewed in context. *People v. Noble,* 238 Mich.App 647, 660; 608 NW2d 123 (1999). The test for prosecutorial misconduct is whether defendant was deprived of a fair trial. *People v. Bahoda,* 448 Mich. 261, 266-267; 531 NW2d 659 (1995).

The first challenged remarks concern defendant's ex-girlfriend. It is clear from the record that the prosecutor's remarks were made in response to allegations raised during defendant's closing argument. *People v. Schutte,* 240 Mich.App 713, 721; 613 NW2d 370 (2000). Defense counsel posed a series of rhetorical questions concerning the taking of the woman's statement. The clear implication of these questions was that the police were not really interested in uncovering the truth, and that they had therefore created a situation in which defendant's ex-girlfriend was pressured to overstate the extent to which defendant allegedly made self-incriminating statements to her. The prosecutor responded that defendant was the person running from the truth. The prosecutor suggested that the better question for the jury to consider was why defendant and his brother had tried to get defendant's ex-girlfriend to lie about the police threatening to take her children away. We conclude that the prosecutor's remarks were not improper

because they were made to rebut charges raised by defendant. *Id.*

*4 Defendant also argues that he was denied a fair trial when the prosecution stated that while defendant "has no burden of proof" and no duty "to bring in any witnesses," common sense dictates that a reasonable person would have produced the two alleged res gestae witnesses, who were characterized as being "very close" to defendant, if they could "blow" the prosecution's case "out of the water." These remarks were made in response to defense counsel's questioning why the two witnesses had not been produced. "Otherwise improper prosecutorial remarks generally do not require reversal if they are responsive to issues raised by defense counsel." *Id.* Given the context and the fact that the trial court sustained defendant's objection to these remarks, we conclude that the defendant was not denied a fair and impartial trial by these remarks. *People v. Watson,* 245 Mich.App 572, 586; 629 NW2d 411 (2001).

Affirmed.

2002 WL 433338 (Mich.App.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

655 N.W.2d 555 (Table)
(Cite as: 655 N.W.2d 555)

**H**

(The decision of the Court is referenced in the North Western Reporter in a table captioned "Supreme Court of Michigan Applications for Leave to Appeal.")

Supreme Court of Michigan

People
v.
**David James Eddleman**

**NO. 121449. COA No. 224957.**

December 04, 2002

Disposition: Delayed application for leave to appeal from March 19, 2002 decision of the Court of Appeals is DENIED.

655 N.W.2d 555 (Table)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

JS 44 11/99 **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: *Wayne*

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I. (a) PLAINTIFFS**

*David James Eddleman*

*#296247*

**DEFENDANTS**

*Ken McKee, Warden*
*Bellamy Creek Correctional Facility*

*04-70830*

(b) County of Residence of First Listed *Ionia*

County of Residence of First Listed *Ionia*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(C) Attorney's (Firm Name, Address, and Telephone Number)

*Andrew Wilkins*
*3974 Alaiedon Parkway Suite 600*
*Okemos, MI 48864*
*(517) 862-3973*

Attorneys (If Known)

*Michigan Attorney General*
**ARTHUR J. TARNOW**
**DONALD A. SCHEER**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | | |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" In One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLA | DEF | | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21: 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injry - Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of Overpayment and Enforcement of Judgment | ☐ 320 Assault Libel and Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☒ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multi district Litigation | ☐ 7 Appeal to District Judge from Magistrate |

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 $DEMAND CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE *March 4, 2004*

SIGNATURE OF ATTORNEY OF RECORD *Andrew Wilkins*

# PURSUANT TO LOCAL RULE 83.11

1.  Is this a case that has been previously discontinued or dismissed?     □ YES  □ NO

    If yes, give the following information:

    Court: _____

    Case No.: _____

    Judge: _____

2.  Other than stated above, are there any pending or previously discontinued
    or dismissed companion cases in this or any other court, including state
    court?  (Companion cases are matters in which it appears substantially
    similar evidence will be offered or the same or related parties are present
    and the cases arise out of the same transaction or occurrence.)     □ YES   □ NO

    If yes, give the following information:

    Court: _____

    Case No.: _____

    Judge: _____

**NOTES:** _____