UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID EDDLEMAN,

    Petitioner,

Case Number: 04-70830

v.

HONORABLE ARTHUR J. TARNOW

KEN MCKEE,

    Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS[1]

### I. Introduction

Petitioner David Eddleman, through counsel, has filed a petition for a writ of habeas under 28 U.S.C. § 2254. He is currently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, pursuant to convictions for second-degree murder and felony firearm. The Court finds that the state court's decision that the admission of Petitioner's coerced confession was harmless error was an unreasonable application of Supreme Court precedent and, therefore, shall conditionally grant a writ of habeas corpus.

### II. Facts

Petitioner's conviction arises out of the shooting death of Joane Georgescu. Georgescu was killed when a bullet fired from a passing car at the parked car in which

---

[1] Staff Attorney Mary Beth Collery provided quality research assistance.



Eddleman v. McKee, No. 04-70830

she was seated struck her in the heart. The shooting occurred on October 13, 1996, at the intersection of Kirkwood and Trenton in the city of Detroit. The shooting was allegedly ordered by Jesus Garcia, a.k.a. King Chuii, the leader of the street gang the Insane Spanish Cobras (Cobras). Numerous witnesses testified that Petitioner was a member of the Cobras.

None of the witnesses at the scene could describe the vehicle from which the weapon was fired, nor could they identify any of the individuals riding in that vehicle. The murder weapon was never recovered.

Several witnesses who were members of the Cobras testified that Chuii frequently sent gang members on "missions." These "missions" typically involved shooting rival gang members. Brian Babbitt testified that Petitioner was sent on a mission on the night of the murder to kill a member of a rival gang. Babbitt testified that he saw Petitioner fire a weapon into a crowd of people standing on the sidewalk at the intersection of Kirkwood and Trenton.

Additional relevant trial testimony is discussed in greater detail below.

### III. Procedural History

Petitioner was charged with first-degree premeditated murder, conspiracy to commit first-degree premeditated murder, and possession of a firearm during the commission of a felony. The jury was also instructed on the lesser offense of second-

Eddleman v. McKee, No. 04-70830

degree murder. Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder and possession of a firearm during the commission of a felony. On September 17, 1999, he was sentenced to thirty to sixty years imprisonment for the second-degree murder conviction, to be served consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims through counsel:

> I. Did the trial court improperly shift the "Walker Hearing" burden of proof to the appellant?
>
> II. In response to the jury "accessory" note, should the trial court have fully instructed the jury upon the law of accessory and aiding and abetting?
>
> III. Was the trial court's due diligence ruling regarding witnesses Johnny Johnson and Lisa Carnes erroneous?
>
> IV. Was the trial court's re-instruction regarding felony firearm incorrect and constitutes reversible error?

Petitioner also filed a *pro per* supplemental brief, presenting the following additional claim:

> Defendant David Eddleman was denied his right to a fair trial guaranteed to him by the Sixth Amendment to the United States Constitution, due to prosecutorial misconduct where the prosecutor engaged in burden shifting during rebuttal argument thus denying the defendant his Fifth Amendment right to remain silent and also his right to stand behind his right to be presumed innocent and have the prosecutor prove their burden beyond a reasonable doubt.

Eddleman v. McKee, No. 04-70830

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Eddleman, No. 433338 (Mich. Ct. App. March 19, 2002).

Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented on direct review to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Eddleman, 467 Mich. 910 (Mich. 2002).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claim:

> The state courts incorrectly ruled that the use of a coerced confession was harmless beyond a reasonable doubt when the confession was used throughout the trial as the prosecution's primary evidence, no scientific evidence identified the Petitioner, and all other evidence was tainted, contradictory, and/or compromised.

## IV. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

4

Eddleman v. McKee, No. 04-70830

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410-11.

Petitioner must therefore demonstrate that the Michigan Court of Appeals' conclusion that admission of his coerced confession was harmless error was "contrary to" or involved an "unreasonable application" of existing federal law.

### V. Analysis

Petitioner presents a single claim for relief in his habeas petition: the state court's conclusion that the improper admission of Petitioner's coerced confession was harmless error was an unreasonable application of Supreme Court precedent.

Eddleman v. McKee, No. 04-70830

### A.

Respondent argues that Petitioner failed to exhaust his state court remedies with respect to this claim because he did not fairly present it as a federal constitutional claim in state court. A petitioner must exhaust his state court remedies prior to seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) & 2254(c). A petitioner may fairly present his federal claim to state court by:

> citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

Baldwin v. Reese, __ U.S. __, 124 S. Ct. 1347, 1351 (2004). *See also* Levine v. Tornik, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993) (holding that a petitioner "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns"). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See* Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990); Dombkowski v. Johnson, 488 F.2d 68, 70 (6th Cir. 1973).

In his state court briefs, Petitioner argued that the admission of his involuntary confession violated his rights to due process and a fair trial. In support of this claim,

Eddleman v. McKee, No. 04-70830

Petitioner cited the Supreme Court's decisions in <u>Davis v. North Carolina</u>, 384 U.S. 737 (1966) (holding that confessions at issue were not freely and voluntarily made and thus were constitutionally inadmissible), and <u>Lego v. Twomey</u>, 404 U.S. 477 (1972) (holding that a coerced confession is inadmissible without regard to its reliability). Petitioner also cited state court cases which relied upon a federal constitutional analysis. *See* <u>People v. Walker</u>, 374 Mich. 331 (Mich. 1965); <u>People v. DeLisle</u>, 183 Mich. App. 713, 722 (1990); <u>People v. Allen</u>, 8 Mich. App. 408, 412-13 (Mich. Ct. App. 1967). Thus, the Court concludes that Petitioner adequately apprised the state courts of the nature of his federal claim.[2]

### B.

The Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding Petitioner's claim, held that the admission of the coerced confession was harmless error, stating, in relevant part:

---

[2] While this conclusion was based upon Petitioner's citing federal cases and state cases relying on federal law, the Court also notes that judges of the Michigan Court of Appeals and justices of the Michigan Supreme Court all take an oath or affirmation of office which requires them to uphold not only the constitution and laws of the State of Michigan, but also the Constitution of the United States. *See* Mich. Comp. Laws §§ 168.400 & 168.409h; Mich. Const. 1963, Art. XI, § 1. Thus, it is this Court's belief that, even had Petitioner not cited federal cases and state cases relying on federal law, the nature of his claim was sufficient to apprise judicial officers charged with supporting the Constitution of the United States that his claim alleged a violation of that document. The preservation of the claim of a Constitutional violation should not hinge upon insertion of certain "magic words," but should, instead, rely upon the common judicial sense of those charged with enforcing the basic rights it affords. In this case, however, the judges and justices of Michigan's state court's did not have to rely upon such common sense as the claim was explicitly presented to them as a federal one.

7

Eddleman v. McKee, No. 04-70830

> [W]e conclude that reversal is not warranted because the error was harmless. People v. Anderson (*After Remand*), 446 Mich. 392; 521 N.W.2d 538 (1994). The testimony of several witnesses clearly implicated defendant in the crime. Brian Babbitt, also a member of defendant's street gang, was in a car traveling behind the car defendant was riding in on the night of the shooting. Babbitt testified that he witnessed shots coming from the passenger side of defendant's car, where defendant was seated. Two other gang members, Brian Weaver and Thomas Valastek, testified that they heard defendant admit to being the shooter. Defendant also told a fellow inmate that he had shot and killed Georgescu. Given the weight of this evidence, we conclude that the erroneous admission of the confession was harmless beyond a reasonable doubt. Id.

Eddleman, slip op. at 2.

Admission of an involuntary confession is subject to harmless-error analysis. Arizona v. Fulminante, 499 U.S. 279, 308 (1991). In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), *quoting* Kotteakos v. U.S., 328 U.S. 750, 776 (1946). "This standard reflects the 'presumption of finality and legality' that attaches to a conviction at the conclusion of direct review." Calderon v. Coleman, 525 U.S. 141, 145 (1998), *quoting* Brecht, 507 U.S. at 633. "It protects the State's sovereign interest in punishing offenders and its good-faith attempts to honor constitutional rights, . . . while ensuring that the extraordinary remedy of habeas corpus is available to those whom society has grievously wronged." Id. (internal quotations omitted).

8

Eddleman v. McKee, No. 04-70830

If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (internal quotation omitted). The Court may not grant habeas corpus relief if it concludes that "the state court simply erred in concluding that the State's errors were harmless; rather habeas relief is appropriate only if the [state court] applied the harmless-error review in an 'objectively unreasonable' manner." Mitchell v. Esperanza, 540 U.S. 12, 18 (2003).

In considering whether the admission of a coerced confession was harmless, "the risk that the confession is unreliable, coupled with the profound impact that the confession has upon the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless." Fulminante, 499 U.S. at 296.

> A confession is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have a profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." Bruton v. United States, 391 U.S. at 139-140, 88 S. Ct. at 1630 (White, J., dissenting). . . . While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of a crime may tempt the jury to rely upon that evidence alone in reaching its decision.

9

Eddleman v. McKee, No. 04-70830

Id.

In <u>Fulminante</u>, the Supreme Court held that the admission of defendant's confession was not harmless error. Fulminante was convicted of murdering his 11-year-old stepdaughter. Police lacked any physical evidence connecting Fulminante to the crime. He was ultimately prosecuted only after authorities learned that, while incarcerated on an unrelated charge, he confessed to the killing to an inmate, Anthony Sarivola, a former police officer who was working as a paid informant for the FBI. Following his release from prison, Fulminante also confessed to Sarivola's wife. Both confessions were admitted at trial.

The Supreme Court held that the first confession was coerced. The Court further held that the admission of a coerced confession is subject to the harmless-error analysis, and, after evaluating the evidence presented, that it was not harmless error in this case. Id. at 306-09, 295-302. In reaching this conclusion, the Supreme Court considered three main factors. First, absent the confessions, it was unlikely Fulminante would have been prosecuted because the physical evidence from the scene and other circumstantial evidence would have been insufficient to convict. Id. at 297. The prosecutor acknowledged the importance of the confession in both his opening and closing statements. Second, the jury's assessment of the reliability of Sarivola's wife's testimony regarding the second confession may have been influenced by the existence of the first,

coerced confession. Absent testimony regarding the first confession, jurors may have been more skeptical of Sarivola's wife's testimony, particularly because she had a motive to lie in that both she and her husband received significant benefits for their testimony. Id. at 298-99. Finally, admission of the first confession led to the admission of other prejudicial evidence against Fulminante. Id. at 300. Based upon the foregoing, the Court concluded that the admission of Fulminante's first, coerced confession was not harmless error.

In the pending case, the Michigan Court of Appeals relied upon the testimony of four witnesses in concluding that the admission of Petitioner's coerced confession was harmless error: Brian Babbitt, Brian Weaver, Thomas Valastek, and Ricky O'Neal. The state court, however, cited only the aspects of their testimony most favorable to the prosecution, and ignored the witnesses' motives for testifying and the inconsistencies in their testimony. Below, the Court considers the aspects of these witnesses' testimony which were ignored by the Michigan Court of Appeals.

Brian Babbitt was a member of the same gang of which Petitioner was a member, the Cobras. He testified that, on the night of the shooting, he was in a vehicle that was trailing the vehicle in which Petitioner was a shooter. He testified that the shots were fired from the front passenger seat of the vehicle in which Petitioner was traveling, and that Petitioner was seated in the front passenger seat. Babbitt was originally arrested as a

Eddleman v. McKee, No. 04-70830

suspect in Georgescu's murder. Babbitt testified at trial pursuant to an agreement with the prosecutor whereby he would not be prosecuted in connection with Georgescu's murder in exchange for his testimony against Petitioner, among others. His testimony at trial differed from the statement he gave to police concerning his involvement in the crime. In his first statement to police, Babbitt denied ever having been in the vehicle with Petitioner on the night of the shooting. In his second statement to police and his testimony at trial, Babbitt admitted to being in a vehicle with Petitioner, but testified that he exited that vehicle prior to the shooting. Babbitt's criminal history was explored on cross-examination. In 1995, he pleaded guilty to larceny from a motor vehicle. In 1996 and 1997, after being charged with felonious assault, he pleaded guilty to intentionally aiming a gun without malice.

Brian Weaver was also a member of the Cobras. He testified that he attended a Cobra meeting on October 13, 1996, at which Petitioner stated that he had gone on a mission the evening before and had been involved in a drive-by shooting. Weaver testified that he knew the meeting took place on October 13, 1996, because it was the morning after he and a group of other Cobra members had gathered at a bar to watch a Mike Tyson/Evander Holyfield boxing match. He testified that he remembered the fight distinctly because it was the match in which Tyson bit Holyfield on the ear. On cross-examination, however, defense counsel showed Weaver a newspaper article establishing

Eddleman v. McKee, No. 04-70830

that the Tyson/Holyfield fight involving the biting incident took place on June 28, 1996.

Thomas Valastek testified that he was also a member of the Cobras. He testified that he was at a bar on the evening of October 12, 1996, with various other Cobras, including the leader, Chuii, watching a boxing match between Mike Tyson and Evander Holyfield. Chuii mentioned that he wanted a mission completed that evening. Valastek testified that he then went back to the Cobras' house where he passed out on a couch for the remainder of the evening. The next morning, the weekly Cobras meeting was held at the house. Valastek testified that, at the meeting, Petitioner bragged that he had been involved in a drive-by shooting the evening before.

On cross-examination, Valastek admitted that he was arrested on January 12, 1997, as a suspect in Georgescu's murder. He gave a statement to police on January 13, 1997, implicating Petitioner. Valastek stated that when he was arrested on January 12, 1997, he was held in the same jail as Babbitt. Valastek noticed that Babbitt was receiving special treatment at the jail. For example, Babbitt was permitted to receive food from outside the facility, visits from family members, and television privileges. Valastek surmised that Babbitt must have provided the police with valuable information to entitle him to these perks. After giving a statement to police implicating Petitioner, Valastek was released from custody. Valastek also testified that he remembered October 13, 1996, as the date on which Petitioner bragged about being involved in a drive-by shooting the previous

evening because it was the day after a Mike Tyson/Evander Holyfield fight. Valastek was impeached with articles from the Detroit Free Press newspaper stating that the Tyson/Holyfield fight took place on June 28, 1996, and a rematch occurred on November 9, 1996.

Finally, the Michigan Court of Appeals relied on the testimony of a jailhouse informant, Ricky O'Neal. O'Neal testified against Petitioner pursuant to a plea agreement whereby he was permitted to plead guilty to two counts of felonious assault. He received sentences of one to four years imprisonment for each conviction, to be served concurrently. O'Neal had originally been charged with assault with intent to rob while armed, which carried a possible life sentence. O'Neal testified that he had served time with Chuii on several occasions, and that the two were very close friends. O'Neal was incarcerated with Chuii while Chuii was awaiting trial in connection with the Georgescu murder. Chuii introduced O'Neal to Petitioner. Petitioner and O'Neal were both incarcerated at the Wayne County Jail from February 1998 through September 1998. O'Neal testified that Petitioner told him that Petitioner had shot and killed a girl and that he, Petitioner, wanted to take sole responsibility for the shooting so that Chuii did not serve prison time.

When considering whether admission of an involuntary confession is harmless, a reviewing court must consider the strength of the other evidence against the defendant. In

Eddleman v. McKee, No. 04-70830

making this determination, the court may consider potential motives of witnesses whose testimony incriminated the defendant. Fulminante, 499 U.S. at 299-300. In this case, all four of the witnesses whose testimony the Michigan Court of Appeals' cited in support of a finding that the admission of the confession was harmless had motives to lie to incriminate Petitioner and, in two cases, to exculpate themselves. Two of the witnesses, Babbitt and Valastek, themselves, were originally arrested as suspects in Georgescu's murder. They were released from custody after they identified Petitioner as the shooter. Three of the four witnesses received significant benefits in exchange for their testimony against Petitioner. Babbitt received immunity from prosecution in Georgescu's murder. Valastek was released from custody after giving a statement to police implicating Petitioner. O'Neal was permitted to plead guilty to a reduced charge in exchange for his testimony.

As in Fulminante, Petitioner's confession in this case likely bolstered the testimony of Babbitt, Weaver, Valastek, and O'Neal. Absent Petitioner's confession, the jury likely may have concluded that each of the four key witnesses' testimony was motivated by their own self-interest in not being prosecuted for the crime or by being permitted to enter a favorable plea agreement rather than by their obligation to tell the truth. Also as in Fulminante, no physical evidence linked Petitioner to the crime.

The importance of Petitioner's confession to a successful prosecution of the case is

Eddleman v. McKee, No. 04-70830

evidenced by the prosecutor's extensive reliance on it. See Fulminante, 499 U.S. at 297; McCalvin v. Yukins, 351 F. Supp. 2d 665, 673 (E.D. Mich. 2005). The prosecutor's introduction into evidence of the confession through detective Barbara Simon was long and protracted. The prosecutor mentioned the confession many times in his opening statement and closing argument. The prosecutor used the confession to cross-examine five defense witnesses. The prosecutor relied on the confession as the basis for arguing that the trial court should deny the defense's motion for directed verdict. The prosecutor stated that the other evidence presented provided corroboration for the confession. Notably, he did not assert that this corroborating evidence, by itself, was sufficient to survive a motion for directed verdict absent the confession.

Respondent argues that the admission of the confession was harmless error because defense counsel "did a thorough job of challenging Petitioner's confession and the circumstances surrounding it." Brief at p. 11. The Court agrees that defense counsel's performance in challenging the confession before the jury was commendable. However, Respondent's argument that defense counsel's able performance somehow renders the improper admission of the confession harmless error completely misses the point. Supreme Court precedent does not provide that the improper admission of a coerced confession may be rendered harmless if a defendant has the good fortune of an attorney who delivers a sterling performance. No matter how sterling the defense

attorney's representation, the confession, the most "probative and damaging evidence" that can be admitted against a defendant, was still improperly before the jury. Fulminante, 499 U.S. at 296. The Court does not know and cannot know what ultimately persuaded the jury to convict Petitioner. That is precisely what renders admission of a coerced confession so suspect. In this case, before returning a guilty verdict, the jury twice informed the court that it was deadlocked. Thus, this case was a close one, with something ultimately convincing a twice-proclaimed deadlocked jury to convict. *See* United States v. Howell, 285 F.3d 1263, 1271 (10th Cir. 2002) (holding that jury's difficulty in reaching a verdict, evidenced by the length of deliberations and jury's report to trial judge that it was deadlocked, strongly supported a finding that trial error was not harmless); United States v. Jean-Baptiste, 166 F.3d 102, 109-110 (2d Cir. 1999) (same). The Court is in grave doubt as to whether the confession influenced the jury to convict.

In holding that admission of Petitioner's confession was harmless error, the Michigan Court of Appeals cited only the aspects of these witnesses' testimony that was most favorable to the prosecution. The Court of Appeals failed to consider the four key witnesses' motives for testifying. The state court failed to consider that several of these witnesses were themselves suspects in the murder and testified pursuant to plea agreements and that two of the witnesses apparently were confused as to the dates on which the murder occurred. The state court further failed to consider the lack of any

physical evidence against Petitioner. The state court also failed to consider that the jury twice informed the court that it was deadlocked. The state court's analysis would be appropriate were it addressing a sufficiency of the evidence claim in which the reviewing court must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Such an analysis is unreasonable in the context of the admission of a coerced confession because the Supreme Court requires that, before determining that the admission of a coerced confession at trial was harmless, a reviewing court must "exercise extreme caution." Fulminante, 499 U.S. at 296. In this case, the Michigan Court of Appeals failed to exercise extreme caution.

Considering that a "defendant's own confession is probably the most probative and damaging evidence that can be admitted against him," id. at 296, that the evidence against Petitioner came from questionable sources and was far from overwhelming, and that the jury twice reported being deadlocked, the Court is in "grave doubt" about whether admission of the coerced confession had "substantial and injurious effect or influence in determining the jury's verdict." O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (internal quotation omitted). The Court further concludes that the state court's application of the harmless-error review was objectively unreasonable.

Eddleman v. McKee, No. 04-70830

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED**.

Unless a date for a new trial is scheduled within ninety days, Petitioner Eddleman must be unconditionally released.

　　　　　　　　　　　　　　　　　　　　ARTHUR J. TARNOW
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

DATE: MAR 2 2 2005

MAR 2 2 2005

DEPUTY CLERK